## ZANE v. HAMILTON COUNTY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 115. Argued and submitted December 5, 1902.—Decided April 6, 1903.

Where the highest court of a State has decided that the act of the legislature under which bonds were issued by a county is unconstitutional and such decision is in conformity with the prior decisions of that court, the bonds, having been illegally issued, do not constitute a contract which is protected by the Constitution of the United States.

THE case is stated in the opinion of the court.

*Mr. George A. Sanders* for petitioners.

I. There was ample legislative authority for the issue of the bonds and coupons in controversy, under the act of March 10, 1869. The declaration avers the citizenship of the plaintiff as that of another State. Gives copy of one of the bonds and coupons, and avers the others are of similar tenor and effect, states when, and for what purpose, the bonds were issued, rate

of interest, and when and where payable. That they were made, executed and delivered by the duly authorized officials of the defendant county in part payment of a subscription for stock of the St. Louis & Southeastern Railway Company, to that company, or bearer, under and by virtue of the authority of a majority of all the legal voters in said county, by their votes at an election held in said county, *pursuant to law,* on the 3d day of November, 1868, and also by the authority given by the provisions of certain acts of the General Assembly of the State of Illinois. That they were issued in part payment of a subscription made by said county under and by virtue of the authority aforesaid to the capital stock of said St. Louis & Southeastern Railway Company, the whole subscription of the county being $200,000. That the bonds were duly registered by the State Auditor November 1, 1871, under the act of April 16, 1869. That the plaintiff purchased the bonds and coupons for an investment in the usual course of business for a good and valuable consideration somewhere on or about February 1, 1874, and long before there was any default in the payment of the interest or principal of the bonds and without any notice whatever of any supposed want of legislative power, or irregularity in their issue.

All these facts are admitted by the general demurrer, and the bonds and coupons must be held valid obligations of the defendant if there was legislative authority for their issue.

There can be no doubt that there is ample legislative power in the act of incorporation of the St. Louis & Southeastern Railway Company for the issue of the bonds in question, and especially under section 20 in that act. This construction has been given to this act in a number of cases.

II. The act of incorporation of March 10, 1869, was not in violation of the constitution of 1848. Counsel for the defendant strenuously insists that the act has been held in violation of section 23, article 3, of the Illinois constitution of 1848, which provides that " no private or local law which may be passed by the General Assembly shall embrace more than one subject and that shall be expressed in the title." Constitution of Illinois of 1848, section 23, article 3. See Revised Statutes of Illinois, Hurd, 1897, page 39.

The first adjudication concerning this issue of bonds was in a chancery proceeding commenced by the county of Hamilton to restrain and enjoin the levy and collection of taxes to pay interest on these bonds. That case was removed to the Federal court of the Southern District of Illinois, and the bonds were held " valid, legal and binding obligations of the said county." This decree was never appealed from, reversed or in any manner set aside or annulled.

Later, a decision in an *ex parte* proceeding (unknown bondholders being served only by newspaper publication) was rendered by the state Supreme Court in the case of *The People* v. *Hamill*, 134 Illinois, 666, holding this issue of $200,000 of bonds void for want of legislative power to issue them. That the act of March 10, 1869, was in violation of section 23, article 3 of the constitution of 1848, and therefore conferred no power for their issue; in 1896, the United States Circuit Court of Appeals rendered a decision in the case of *Austin* v. *Hamilton County*, 22 C. C. A. 128; 79 Fed. Rep. 208, in which other bonds and coupons of this issue than those mentioned in the decree of June 5, 1881, were involved, affirming the decision of the court below on the ground that the plaintiff *was not a bona fide holder of some of the bonds and coupons* involved, having presumably purchased them after a knowledge of the decision of the state Supreme Court in the case of *The People* v. *Hamill*, 134 Illinois, 666. And see *Franklin County* v. *German Savings Bank*, 142 U. S. 99.

The position of the counsel for the defence that the decision in the case of *Bolles* v. *Hamilton County*, 20 C. C. A. 401, is *res adjudicata* as to the case at bar is untenable. See *Woodbury* v. *City of Shawneetown*, 20 C. C. A. 400; 74 Fed. Rep. 205.

In these decisions the Appellate Court never passed upon the only question presented under the demurrer in the case at bar, to wit, the constitutionality of the act of March 10, 1869, save in the *Austin* v. *Hamilton County* case where it sustains the decree of the Federal court below of June 5, 1881, when it says, this question equally with others "were determined by the decree."

III. Counsel for the defence insists that there was no law

granting any power whatever to issue the bonds in controversy in existence when the vote was taken.

There is now no question, under the decisions of the Federal courts but that the legislature had power to ratify, confirm and legalize the exercise of any power by public corporations, which it might have authorized in the first instance. *Bolles* v. *Brimfield*, 120 U. S. 759; *Anderson* v. *Santa Anna*, 116 U. S. 364; *Grenada County* v. *Brogden*, 112 U. S. 271.

IV. The act of March 10, 1869, incorporating the St. Louis & Southeastern Railway Company is not unconstitutional by reason of its title; nor is it a local or private act. Illinois Revised Statutes, Hurd's 1897, article 3, section 23, page 39; *Unity* v. *Burrage*, 103 U. S. 447, October term, 1880; *Belleville &c. Railroad Company* v. *Gregory*, 15 Illinois, 20; *Fireman's Benevolent Association* v. *Lounsbury*, 21 Illinois, 511; *Schuyler County* v. *People*, 25 Illinois, 181; *O'Leary* v. *County of Cook*, 28 Illinois, 534; *Erlinger* v. *Boneau*, 51 Illinois, 95; *People* v. *Brislin*, 80 Illinois, 423; *Binz* v. *Weber*, 81 Illinois, 288. The act cannot, therefore, be held to be open to the constitutional objection, even under the state court decisions. *San Antonio* v. *Mehaffy*, 96 U. S. 315; *Jonesboro City* v. *Cairo & St. Louis Railroad Co.*, 100 U. S. 192; *Johnson* v. *The People*, 83 Illinois, 431; *Mount Clair* v. *Ramsdell*, 107 U. S. 147; *Supervisor* v. *C., B. & Q. R. R. Co.*, 44 Illinois, 229; *City of Ottawa* v. *People*, 48 Illinois, 223; *City of Virden* v. *Allen*, 107 Illinois, 506.

Nor is the act of March 10, 1869, a local or private act. Section 21, of the act, Private Laws of Illinois, vol. 3, 1869, is as follows, to wit: "This act shall be deemed a public act and shall be liberally construed for all purposes therein expressed and declared, and shall be in force from and after its passage." See Abbott's Law Dictionary.

Acts creating public corporations are public statutes. *Portsmouth Livery Company* v. *Watson*, 10 Massachusetts, 9; *Pollock* v. *McClurken*, 42 Illinois, 37; *Bumhaum* v. *Webster*, 5 Massachusetts, 266.

V. The decision of the state Supreme Court in *People* v. *Hamill*, 134 Illinois, 666, is not conclusive, and is not the law of the

land, nor of the State of Illinois.    Both state and Federal courts
were not in accord with it before, and are not since, it was
rendered June 16, 1888, as will clearly appear by the above
citations.    The decisions of the state Supreme Court, as shown
above, have been uniformly against the decision rendered in
that case.    *Pana* v. *Bowler*, 107 U. S. 540 ; *Butz* v. *City of
Muscatine*, 8 Wall. 575 ; *Burgess* v. *Seligman*, 107 U. S. 33.

We admit the rule that no recital can supply the want of
legal authority for the execution of the bonds, but insist that
the act of March 10, 1869, gave plenary legislative authority
for the issue of the bonds and was not repugnant to the con-
stitution of 1848, and that the admitted facts averred in the
declaration and the recitals on the bonds are sufficient in law
for a *bona fide* holder of the bonds to recover judgment there-
on.

VI. The equities of this case are all with the plaintiff.    It
would seem an anomaly in jurisprudence for the courts to
hold that a part of an issue of bonds issued at the same time
and date, executed and delivered by the same officials, under
the same statute, on the same vote, for the same purpose and
of the same tenor and effect, should be held valid and a part
void, for want of power to issue them.

*Mr. J. M. Hamill* for respondent.

I. The bonds were void on their face.    There was no authority
of law for issuing these bonds and an examination of the acts
referred to on the face of each bond supposed to confer author-
ity will demonstrate that the bonds were issued without author-
ity of law and are void. .

The Supreme Court of Illinois in *The People ex rel. Standefer*
v. *Hamill*, 134 Illinois, 670, 671, held section 20 of the act in-
corporating the St. Louis and Southeastern Railway Company
to be in violation of article 3 of section 23 of the constitution
of 1848, citing, *Belleville &c. R. R. Co.* v. *Gregory*, 15 Illinois,
20 ; *City of Virden* v. *Allen*, 107 Illinois, 505 ; *Lockport* v.
*Gaylord*, 61 Illinois, 276 ; *Middleport* v. *Ætna Life Ins. Co.*,
82 Illinois, 562.

The act of April 16, 1869, Public Laws of Illinois, 1869, p. 319,

the only remaining act recited on the face of the bonds purporting to show authority for issuing them, grants no power or authority to issue bonds, but only provides when such bonds have been issued under authority of law how they shall be paid. It is contended that the recitals in the bonds estopped the defendant from denying their validity and it is claimed that on their face they import a compliance with the law under which they were issued. But counsel have failed to show that there was any law authorizing the issue of the bonds. This court has never intended to decide, and has never decided even where the rights of *bona fide* holders have been involved, that where the bonds have been issued without legislative authority they are valid and binding against the municipal corporation issuing them. *Northern Bank of Toledo* v. *Porter Township*, 110 U. S. 615. This court said in *Cohens* v. *Virginia*, 6 Wheat. 264, and in *Carroll* v. *Lessee of Carroll*, 16 How. 275, 287, that it was a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which they are used; and see *Post* v. *Supervisors*, 105 U. S. 668; *Katzenberger* v. *Aberdeen*, 121 U. S. 176; *Dixon County* v. *Field*, 111 U. S. 92; *McClure* v. *Township of Oxford*, 94 U. S. 432; *Crow* v. *Oxford*, 119 U. S. 221; *Kelly* v. *Millan*, 127 U. S. 150.

If it appears upon the face of the bonds sued on as in this case, that they were issued under a certain act mentioned in the bonds and that act is void, the bonds themselves will be void. *Gilson* v. *Dayton*, 123 U. S. 59; *Lippincot* v. *Town of Pana*, 92 Illinois, 34; *Gaddis* v. *Richland County*, 92 Illinois, 126; *Barns* v. *Town of Lacon*, 84 Illinois, 464; *Middleport* v. *Ætna Life Ins. Co.*, 82 Illinois, 564; *Marshall* v. *Sillimon et al.*, 61 Illinois, 223.

An examination of every case cited by counsel for plaintiff in error will show that in each of these cases there was legislative authority given to issue the bonds. These decisions, therefore, have no application to the facts in this case. The courts have never held that where there was no legislative power given to issue the bonds, the corporation was estopped from denying want of authority. Recitals in bonds issued under legisla-

tive authority may estop the municipality from disputing their
authority as against a *bona fide* holder for value, but when the
municipal bonds are issued in violation of law, or a constitu-
tional provision, no such estoppel can arise by reason of any
recitals contained in the bonds. `Lake County* v. *Rawlins,* 130
U. S. 662; *Lake County* v. *Graham,* 130 U. S. 674; *Sutliff* v.
*Lake County Commissioners,* 147 U. S. 230.

This court has held that it will abandon its former decision
construing a state statute if the state courts have subsequently
given to it a different construction. *Fairfield* v. *County of Gal-
latin,* 100 U. S. 54, 55; *Green* v. *Neal's Lessee,* 6 Pet. 291;
*Sudam* v. *Williamson,* 24 How. 427.

The decisions of the highest judicial tribunal of a State are
entitled to great and ordinarily decisive weight. *Rich* v. *Mentz
Township,* 134 U. S. 632; *Meriwether* v. *Muhlenberg County
Court,* 120 U. S. 354; *Claybourne County* v. *Brooks,* 111 U. S.
400, 410.

When the construction of the constitution or the statute of
a State has been fixed by an unbroken series of decisions of
its highest court, the courts of the United States accept and
apply it in cases before them. *Township of Elmwood* v. *Mercy,*
92 U. S. 289; *Township of Oakland* v. *Skinner,* 94 U. S. 255;
*Barnum* v. *Okolona,* 148 U. S. 393; *Burgess* v. *Seligman,* 107
U. S. 33; *Austin* v. *Hamilton County,* 76 Fed. Rep. 208.

II. Bonds issued in violation of constitution are void. Munici-
pal bonds in Illinois, issued since the adoption of the constitu-
tion of 1870 as these bonds were, are *prima facie* invalid, and the
burden of proof rests upon the plaintiff to show affirmatively
that they were authorized under existing laws by a vote of the
people prior to that time. *McClure* v. *Township of Oxford,*
94 U. S. 429; *Buchanan* v. *Litchfield,* 102 U. S. 278; *German
Savings Bank* v. *Franklin County,* 128 U. S. 526; *Jackson
County* v. *Brush,* 77 Illinois, 59.

These bonds were issued in violation of separate section 2 of
the constitution of 1870 which went into force July 2, 1870.
It is well settled that all negative or prohibitory provisions
even in a constitution execute themselves, making void all acts
done in violation of such provisions, the same as if in violation

of express statutory law. *Law* v. *People*, 87 Illinois, 385; *Fuller* v. *City of Chicago*, 89 Illinois, 282.

The bonds on their face bear date October 23, 1871, and therefore every purchaser of them was bound to know that they were issued after the positive prohibition of the constitution had been adopted, preventing every municipality in the State from voting to become a subscriber to the capital stock of any railroad or private corporation. *Concord* v. *Robinson*, 121 U. S. 169.

The courts concur with great unanimity in holding that there is no authority in municipal corporations to incur debts or borrow money in order to become subscribers to the capital stock of a railway corporation and that such power must be conferred by *express grant.* Dillon on Municipal Corporations, 4th ed. vol. 1, sec.161; *Kelly* v. *Milan*, 127 U. S. 139; *Norton* v. *Dyersburg*, 127 U. S. 160; *Wells* v. *Supervisors*, 102 U. S. 625; *Lewis* v. *City of Shreveport*, 108 U. S. 282, 283.

If the power to issue bonds in aid of a railway company does not exist, they are void into whosesoever's hands they may come. Dillon on Municipal Corporations, 4th ed. vol. 1, sec. 163; *Marsh* v. *Fulton County*, 10 Wall. 676; *Allen* v. *Louisiana*, 103 U. S. 80.

A municipality must have affirmative legislative authority to enable it to subscribe to the capital stock of a railroad corporation before its officers can bind the body politic to the payment of bonds purporting to be issued on that account, and if it has not such authority the bonds will be void into whosesoever's possession they may come. *McClure* v. *Township of Oxford*, 94 U. S. 432; *Township of East Oakland* v. *Skinner*, 94 U. S. 255; *Town of Concord* v. *Portsmouth Savings Bank*, 92 U. S. 625.

It is claimed that by subsequent ratification the county may make legal and valid bonds that, when they were issued, were illegal and void. The legislature never made any attempt to ratify, confirm or legalize these bonds. Even the legislature had no power to ratify and confirm bonds that were issued without authority of law and in violation of the constitution. Dillon on Municipal Corporations, 4th ed. vol. 1, sec. 463.

Corporate ratification without authority from the legislature cannot make a municipal bond valid which was void when issued, for want of legislative power to make it. *Lewis* v. *City of Shreveport*, 108 U. S. 282; *Marsh* v. *Fulton County*, 10 Wall. 676.

The legislature itself cannot confer any power on the county to ratify bonds issued without authority of law and in plain violation of the constitutional prohibition.

As no legislative authority or grant of power by the legislature to the county to enable it to subscribe to the capital stock of the railroad company, and issue bonds in payment of such subscription, is shown in the declaration, or on the face of the bonds, there was no power in the county to issue them, and the bonds having been issued after the constitution went into effect, and in plain violation of the constitutional prohibition, the bonds are absolutely void into whosesoever's hands they may come, and as bonds that are void can create no liability against the county, the demurrer to the declaration was properly sustained.

Mr. Justice McKenna delivered the opinion of the court.

This is an action brought in the United States Circuit Court for the Southern District of Illinois on five coupon bonds which were issued to the St. Louis and Southeastern Railway Company, under a statute of the State of Illinois. The petitioner alleges she is a *bona fide* purchaser of the bonds. A copy of the bonds is inserted in the margin.[1] The following is a copy of the coupons attached to the bonds:

---

[1] United States of America.

| | | |
|---|---|---|
| No. 36. | Bond of | $1000.00 |
| | Hamilton County. | |
| Interest seven per cent. | | Payable semi-annually. |
| | State of Illinois. | |

Know all men by these presents, that the county of Hamilton, in the State of Illinois, acknowledges itself indebted and firmly bound to the St. Louis and Southeastern Railway Company, or bearer, in the sum of one thousand dollars, lawful money of the United States of America, which sum said county for value received promises to pay the said company, or bearer,

" $35.00.                                               $35.00.

McLeansboro, Hamilton County, Illinois.

January 1, 1872.

" The county of Hamilton, in the State of Illinois, promises to pay the sum of thirty-five dollars on the first day of January, 1892, lawful money of the United States of America, being six months' interest on bond No. 46 for one thousand dollars, issued on subscription to the St. Louis and Southeastern Railway Company.

" This coupon is payable in the city of New York.

" J. W. MARSHALL, *Clerk*."

---

in the city and State of New York, twenty years after date, payable at any time before this bond becomes due after five years at the pleasure of said county of Hamilton, with interest thereon from the date hereof at the rate of seven per cent per annum, payable semi-annually on the first days of January and July in each year, on the presentation and surrender, at the place in said city of New York, where the treasurer of the State of Illinois pays the interest and debt of said State, of the coupons hereto attached as they severally become due.

This bond is one of two hundred of like tenor and amount, of same issue, and it is issued under and by virtue of the authority given by a majority of all the legal voters in said county, by their votes, at an election held in said county, pursuant to law, on the third day of November, A. D. 1868, and also by the authority given by the provisions of an act of the general assembly of the State of Illinois, in force March 10, A. D. 1869, entitled " An act to incorporate the St. Louis and Southeastern Railway Company."

This bond is also issued under the provisions of an act of the general assembly of the State of Illinois, in force April 16, A. D. 1869, entitled " An act to fund and provide for the payment of the railroad debts of counties, townships, cities and towns."

This bond is issued in part payment of a subscription made by said county under and by virtue of the authority aforesaid, to the capital stock of the St. Louis and Southeastern Railway Company, in the sum of two hundred thousand dollars.

In testimony whereof, the said county of Hamilton has executed this bond, by the county judge of said county under the order of the county court of said county, signing his name hereto, in open court, and by the clerk of said court, in obedience to the order thereof, attesting the same and affixing hereto the seal of the said court, in open court.

Done at the court house at McLeansboro, in said county, on this the 23d day of October, Anno Domini 1871.

[SEAL.]                              T. B. STEELE,

*County Judge of Hamilton County, Ill.*

The bonds were a part of an issue of two hundred of like tenor and amount, save as to dates of issue, registration and numbers. There was a general demurrer filed to the declaration, which was sustained, and the case was taken to the Circuit Court of Appeals for the Seventh Circuit. That court affirmed the judgment of the Circuit Court. 104 Fed. Rep. 63.

The question presented is the validity of the statute of the State under which the bonds were issued. The Circuit Court of Appeals followed the case of *The People ex rel.* v. *Hamill,* 134 Illinois, 666, and (quoting from the case) held that the statute was invalid " because section 20 of the act mentioned was void, as being in violation of the provision of the constitution of the State, that ' no private or local law . . . shall embrace more than one subject, and that shall be expressed in the title.' "

It was alleged in the declaration and the bonds recited that they were issued under the provisions of an act of the general assembly of the State of Illinois, in force March 10, 1869, entitled " An act to incorporate the St. Louis and Southeastern Railway Company," and also under the provisions of an act in force April 16, 1869, entitled " An act to fund and provide for paying the railroad debts of counties, townships, cities and towns."

The act of April 16, 1869, was a mere registration act, and, it is conceded, conferred no authority to issue the bonds. Ample authority, however, it is insisted, was given by the act of March 10, 1869. Sections 15, 16 and 17 provided for the subscription by counties and cities and incorporated towns to the stock of the company, and the terms of issue and payment of the bonds, and sections 20 and 21 provide as follows :

" Sec. 20. And the said company may lease or purchase, upon such terms as may be agreed upon, any other railroad or parts of railroad, either wholly or partially constructed, which may constitute or be adopted as part of their main line ; and by such lease or purchase, they shall acquire and become vested with all the rights and franchises pertaining to said road or part of road in the right of way, construction, maintenance and working thereof. And the county court of Gallatin County is hereby

authorized and empowered to subscribe to the capital stock of this company the one hundred thousand dollars, or any part thereof, heretofore voted by a majority of the legal voters of said county to the Shawneetown branch of the Illinois Central Railroad Company.   And the county court of Hamilton County is hereby authorized and empowered to subscribe to the capital stock of this company the two hundred thousand dollars, or any part thereof, heretofore voted by a majority of the legal voters of said county to the Shawneetown branch of the Illinois Central Railroad Company.   And the county court of Jefferson County is hereby authorized and empowered to subscribe to the capital stock of this company the one hundred thousand dollars, or any part thereof, voted by a majority of the legal voters of said county to the Mount Vernon Railroad Company.   And it shall not be necessary to submit the question of making the several subscriptions in this section mentioned to the vote of the legal voters of said respective counties: *Provided*, That nothing herein shall be so construed as to prevent either of the counties mentioned in this section subscribing any other or larger amounts to the capital stock of this company than the amounts mentioned in this section.

" SEC. 21. This act shall be deemed a public act, and shall be liberally construed for all purposes therein expressed and declared; and shall be in force from and after its passage."

As we have seen, this act was declared by the Supreme Court of the State in *The People ex rel.* v. *Hamill*, 134 Illinois, 666, to be in violation of the constitution of the State, and that the bonds issued under it were void.   This decision, plaintiff in error contends, is contrary to prior decisions interpreting the constitution of the State, and under the faith of which she purchased the bonds, and she insists that a contract hence arose which is protected by the Constitution of the United States. To support the contention a number of decisions are cited, but we do not consider it necessary to review them.   The conclusion of plaintiff in error is but a deduction from them, and we need only consider the more direct cases.

In *Johnson* v. *People*, 83 Illinois, 431, 436, it was decided that the provisions of the constitution, that " no private or local

law . . . shall embrace more than one subject, and that shall be expressed in the title," did not require that the subject of the bill should be specifically and exactly expressed in the title, and it was concluded that when the title calls attention to the subject of the bill, although in general terms, it fulfills the requirement of the constitution. In *City of Ottawa* v. *The People ex rel.*, 48 Illinois, 233, it was held that the " adjuncts to the subject are not required to be expressed, or the *modus operandi.*"

In *The Belleville &c. Railroad Co.* v. *Gregory*, 15 Illinois, 20, (1853) and *Supervisors of Schuyler Co.* v. *People ex rel. R. I. & Alton R. R. Co.*, (1860), 25 Illinois, 181, it was held that a subscription to the stock of a railroad company by a municipal corporation was so far germane to the incorporation of the railroad as not to require specific mention in the title of an act providing for the incorporation of such road. But whatever may be said of the reasoning of those cases, the contention of plaintiff in error goes beyond it. If an incorporation of a railroad and a subscription to its stock are parts of the same subject, the incorporation of one road and the transfer to it of the stock authorized to be taken in another road are certainly not parts of the same subject, more particularly when the subscription to the stock of the latter depended upon and was based upon the vote of the people of the county. And this the Supreme Court decided in *The People ex rel.* v. *Hamill, supra.* It was also decided that the act of 1869 was not a private and local act. The court said :

" It is seen, the act of March 10, 1869, to which reference is made as giving the requisite authority to the county to subscribe for the stock and issue the bonds, is ' An act to incorporate the St. Louis and Southeastern Railroad Company.' That is all it purports to be by its title. The constitution of 1848, under which this act was passed, contained a restriction that ' no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title.' This is a private or local act, and although the subscribing by counties, etc., to the capital stock of the corporation thereby created, is germane to the object

expressed in the title, *Belleville &c. Railroad Co.* v. *Gregory,* 15 Illinois, 20; *City of Virden* v. *Allan,* 107 Illinois, 505, the diversion to that corporation of a subscription theretofore authorized by a vote of the people to be made to a different corporation is a wholly different thing. That, it is to be presumed, affects, adversely, the corporation from which the subscription voted is to be diverted, and is, therefore, clearly not germane to the title of the act, and section 20 must therefore be held to have been inhibited by the constitution of 1848, and is for that reason void and of no effect. *Lockport* v. *Gaylord,* 61 Illinois, 276; *Middleport* v. *Ætna Life Insurance Co.,* 82 Illinois, 562."

It was held in *The Belleville &c. Railroad Co.* v. *Gregory, supra,* that the provision of the constitution of that State could not be evaded by declaring a private act to be a public one.

From these views it follows that the bonds of plaintiff in error, having been illegally issued, do not constitute a contract which is protected by the Constitution of the United States.

*Judgment affirmed.*